IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND (NORTHERN DIVISION)

NANCY L. DOYLE                              *

    Plaintiff                              *

v.                                          *       Civil Action No. 08-CV-1106 RDB

RITE AID CORPORATION                        *

    Defendant                              *

     *     *     *     *     *     *     *     *     *     *     *

## RITE AID CORPORATION'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

### Introduction

    Nancy Doyle ("Ms. Doyle") is a former Rite Aid Store Manager in Alexandria, Virginia. She took a leave of absence on December 6, 2006 after she became incapacitated from Lyme disease.  Ms. Doyle never thereafter sought to be reemployed by Rite Aid Corporation ("Rite Aid"). Ms. Doyle alleges Rite Aid discriminated against her because of her disability, age and gender because she was not given sufficient support staff to help her operate her store when her medical condition deteriorated, including when Rite Aid transferred staff into positions at other stores. Ms. Doyle's disability discrimination claim has been consistently rejected as an unreasonable accommodation under the American with Disability Act.  Ms. Doyle's age and gender discrimination claims have no factual or legal basis.  Rite Aid should be granted summary judgment.

**Factual Background**

A.    Ms. Doyle's Employment at Rite Aid.

Ms. Doyle was a store manager at Rite Aid Store No. 3658 in Alexandria, Virginia from

1993 through December 2006.  A Rite Aid Store Manager is required to "stand dynamically for long

periods without a break," and "talk and hear: verbally express ideas and impart information or

instructions, maintain balance while walking, standing, crouching, or running."  (Rite Aid Job

Description - Store Manager, attached as Exhibit A, p. 3).  A store manager is supposed to close the

store one night a week and work a full shift every other Saturday.  (Affidavit of Bill Jackson and

Store Managers' Work Week Schedule, attached as Exhibit B ("Jackson Aff.").  Employees of a Rite

Aid store include cashiers, key cashiers (also known as shift supervisors), an assistant manager and

the store manager.

In June 2002, Ms. Doyle was hospitalized for a pulmonary embolism and had a period of

convalescence before she was able to return to work in August 2002.  After her return to work,

Ms. Doyle realized she was having significant difficulty with tasks involving short-term memory

skills.  In 2003, Ms. Doyle was diagnosed with Lyme disease and had symptoms of stuttering,

fatigue, memory loss, and decomposition.  (Deposition Transcript of Nancy Doyle, attached in

pertinent part as Exhibit C ("Doyle Tr."), p. 12).

In 2004, Ms. Doyle obtained a note from her doctor, Sarah Fletcher, M.D., recommending that

Ms. Doyle not work nights.  Ms. Doyle spoke about the accommodation with her District Manager

and the Rite Aid Human Resource Manager.  They agreed to the requested accommodation.

Ms. Doyle would not have to work any nights, and could come in at 5:00 a.m. and leave by 3:00 p.m.

even though the store hours were 7:00 a.m. to 9:00 p.m.  Ms. Doyle was also permitted to take off

every Thursday and Friday so she could travel to North Carolina to obtain treatment for her Lyme

disease.  (Doyle Tr., pp.17-21).

In June 2006, Ben Amin "Benny" Tokhi became Ms. Doyle's District Manager.  A district

manager is responsible for the operation of all stores in a specific geographic district.  Mr. Tokhi's

district in northern Virginia had 23 stores.

Soon after he began, Mr. Tokhi sought to familiarize himself with the employees at the stores

and the staffing needs of the stores.  Therefore, Mr. Tokhi began considering the promotion and

transfer of management personnel in his district.  He spoke to several employees at Store No. 3658.

He asked Daniela Iankova, the shift supervisor, whether she would be interested in becoming an

assistant store manager.  Mr. Tokhi also spoke to the assistant store manager, Hanh Le, about the

possibility of transferring to Store No. 3734 in Springfield, Virginia.  Mr. Tokhi discussed the

transfer with Ms. Doyle.  He also asked Jose Rodriquez, a photo clerk, whether he was interested in

a promotion to shift supervisor at another store.  Thereafter, he transferred Jose Rodriquez to Store

No. 3645 and promoted him to shift supervisor.  (Affidavit of Benny Tokhi, attached as Exhibit D

("Tokhi Aff.") ¶ 7-11).

Ms. Doyle became very upset about the possibility of her store staff changing.  In August

2006, Ms. Doyle wrote a letter to Carl "Bill" Jackson, the Regional Vice President, complaining

about Mr. Tokhi's actions.  The letter said, in pertinent part:

> He is now coming in and raping my store staff.  My people are well trained
> and he is breaking up my staff to cover other stores, without any
> consideration on how this [sic] effects the operation of my store.  He pulled
> my rite express to a key to 2646.  He has come in several times to push my

ass't to become a manager at another store.  He came back in on Thursday and talked to my key to be an ass't and is coming back to talk to my other key for a promotion to ass't.----[sic] What about my store and me? ******* I am 66 years old with a disability and a DM that is not working with any regard to me, the store, or staff.

(Nancy Doyle's letter dated August 14, 2006, attached as Exhibit E).

Mr. Jackson met with Ms. Doyle and listened to her complaints.  Ms. Doyle told him she was working from 5:00 a.m. to 2:00 p.m. due to her Lyme disease condition, because she gets tired at night.  He told her it was agreeable for her to work only a morning/afternoon schedule, but she needed to come in later and work later.

In early October, Ms. Doyle retained a lawyer, Mindy Farber, who wrote a letter to Mr. Jackson complaining of Mr. Tokhi's conduct towards Ms. Doyle.  As a result of Ms. Farber's correspondence, Rite Aid Division Human Relations Manager Michelle Stahl conducted an investigation.  At this same time, Mr. Jackson informed Mr. Tokhi not to take any action with regard to moving employees in Store No. 3658 until they were reviewed with the Regional Human Relations Manager, and there were people available to replace anyone who was transferred. (Jackson Aff., ¶ 8-10).

Ms. Stahl first spoke with Ms. Doyle on October 9, 2006.  Ms. Stahl called the store on October 16, 2006.  She told Ms. Doyle that she wanted to arrange a meeting with Ms. Doyle and Mr. Tokhi.  Ms. Doyle said she was not willing to meet with Mr. Tokhi.  It was then arranged that Ms. Stahl would meet with Ms. Doyle at the store on October 20, 2006.

When Ms. Stahl arrived at the store on October 20, 2006, Ms. Doyle told her she would not speak with her, that she had tried to talk to Mr. Jackson and nothing happened, and began to cry and

left the store.  Ms. Stahl interviewed employees of Store No. 3658, including Ms. Le, the Assistant

Manager, and Ms. Iankova, the key cashier.  Ms. Stahl was forced to discontinue the investigation

when Ms. Doyle would not cooperate.  (Affidavit of Michelle Stahl, attached as Exhibit F).

It is Rite Aid's policy that employees may be transferred to other stores whenever it is

considered necessary.  It was never agreed that the management personnel in Ms. Doyle's store

would not be transferred.  (Jackson Aff., ¶ 7).

In November 2006, Ms. Le was transferred to Store No. 3734 and Ms. Iankova was then

promoted from key cashier to assistant manager (Tokhi Aff., ¶ 15 and 16).  On November 24, 2006,

Ms. Doyle requested a leave of absence because of her Lyme disease and the pressure of a smaller

staff.  The leave of absence application was accompanied by a certification from Sarah Fletcher,

M.D., stating that Ms. Doyle had chronic Lyme disease and was "incapacitated for an unknown

duration."  (Nancy Doyle's Leave of Absence Application, attached as Exhibit G).

At her request, Ms. Doyle's leave of absence was extended to the maximum leave of one

hundred eighty days (180) days under Rite Aid policy.  After the 180 days expired, Rite Aid wrote

to Ms. Doyle informing her that she had been terminated because she had exhausted her leave, but if

she wanted to be reemployed, she should contact the Human Resource Manager.  (Letter from

Sylvia Spangler, attached as Exhibit H).  Ms. Doyle did not apply for re-employment in June 2007

because she did not feel healthy enough to work.  (Doyle Tr., p. 139).

B.    Testimony of Ms. Doyle.

Ms. Doyle never heard Mr. Tokhi or anyone make disparaging remarks about her age, gender

or disabling condition (Doyle Tr., pp. 104-105) and was never told that anyone at Rite Aid had

made any such disparaging remarks (Doyle Tr., pp. 105-108).  She said her age discrimination claim

was based on the fact that she went out on a leave of absence, and she was replaced by Mr. Tohki

with "his friend, a younger male." (Doyle Tr., pp. 108-109).  She could identify no acts showing

gender discrimination.  (Doyle Tr., p. 110).

Ms. Doyle's evidence of disability discrimination was that Mr. Tokhi transferred her

Assistant Manager, Ms. Le, in November 2006 at a time when Ms. Doyle's medical condition had

gotten worse and she needed Ms. Le for the Christmas season.  (Doyle Tr., pp. 110-115).  She did

not feel that her medical condition--problems with walking, thinking, and speaking--permitted her to

operate the store with only three management personal:  a store manager, assistant manager and one

shift supervisor.  (Doyle Tr., pp. 93-97, 121).[1]  Ms. Doyle's illness became worse because she did

not have help with the work, so she had to work more hours and do more routine things.  (Doyle Tr.,

p. 123).  At the time she took the leave of absence, she was not functioning; she was not able to

walk or talk. (Doyle Tr., p. 124).

C.     Testimony of Dr. Sarah Fletcher.

Dr. Fletcher is Ms. Doyle's internist.  It is Dr. Fletcher's opinion that as of November 30,

2006, Ms. Doyle was incapacitated from working.  (Deposition Transcript of Dr. Sarah Fletcher,

attached in pertinent part as Exhibit I ("Fletcher Tr."), pp. 100-101).  Ms. Doyle was having

problems with her reasoning ability, and her language skills were severely hampered.  She could not

perform many of the physical demands of a Rite Aid store manager as she was unable to maintain

balance when walking, standing and running.  (Fletcher Tr., pp. 104-108).  Ms. Doyle could only

---

[1]  In 2002, Ms. Doyle operated the store with three management personnel.  (Doyle Tr., p. 121).

meet the requirement of a store manager if other persons did parts of her job for her.  She could not

do all the functions by herself.  (Fletcher Tr., p. 131).  After Ms. Doyle went on her leave of

absence, her medical condition did not improve.  (Fletcher Tr.,  pp. 128-129).

      D.     <u>Testimony of Linda Newman</u>.

      Ms. Newman worked as a pharmacist at Rite Aid Store No. 3658 beginning in December

2005.  When she first began working, she noticed Ms. Doyle had occasional problems with fatigue

and trouble with balance.  In late Summer/early Fall of  2006, she observed that Ms. Doyle's

problems with unsteadiness and her stuttering had increased (Deposition Transcript of Linda

Newman, attached in pertinent part as Exhibit J ("Newman Tr."), pp. 17-19) and that Ms. Doyle

needed her store staff to do more things for her.  (Newman Tr., pp. 21-24).  The Assistant Manager,

Hanh Le, would do things for Ms. Doyle that she, as the store manager, usually had done.  (Newman

Tr., pp. 33-34).  After Ms. Doyle went on her leave of absence, the store continued to operate with

three management personnel.

<b><u>Legal Discussion</u></b>

      A.     <u>Summary Judgment Standards</u>.

      Pursuant to Federal Rule 56(c), summary judgment is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  Fed.R.Civ.P. 56(c) (1999); *Evans v. Holiday Inns, Inc.*, 951 F.Supp.

85, 87 (D.Md. 1997) (Davis, J.).  A fact is material for purposes of summary judgment, if, when

applied to the substantive law, it affects the outcome of the litigation.  *Evans*, 951 F.Supp. at *Id.*

(quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Evans*, 951 F.Supp. at *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Evans*, 951 F.Supp. at *Id*. "The non-movant cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *Id*.

   Ms. Doyle has brought three causes of action against Rite Aid: Count I - Gender Discrimination under Title VII, 42 U.S.C. § 2002e-2(a); Count II - Age Discrimination under ADEA, 29 U.S.C. § 633a(a); and Count III - Disability Discrimination under 42 U.S.C. § 2000e-2(a). Viewing the evidence in a light most favorable to Plaintiff, Rite Aid is entitled to judgment on each of these costs.

   B.      Plaintiff Has No Evidence Of Gender Or Age Discrimination.

   Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Title VII "makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 526 (1993). To prevail on a claim for gender discrimination, the plaintiff must prove that an adverse employment action was taken against her and that the adverse employment action was, at least in part, motivated by her gender. *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004).

The Age Discrimination in Employment Act ("ADEA") provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623.  Under the ADEA, "the plaintiff bears the burden of proving that age was a determining factor in the relevant employment decisions." *Mereish v. Walker,* 359 F.3d 330, 334 (4th Cir. 2004).

To demonstrate an adverse employment action, Ms. Doyle must show that Rite Aid carried out an "ultimate employment decision" against her, such as termination or failure to promote, or otherwise acted in a way that adversely affected "the terms, conditions, or benefits" of her employment.  *Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001).

The first method of proving a violation of the ADEA or Title VII is to provide direct or circumstantial evidence that the prohibited characteristic (*i.e.,* age or gender) was a motivating factor in the adverse employment action.  *Hill,* 354 F.3d at 284. The second method is known as the "*McDonnell Douglas* burden-shifting framework," which requires the plaintiff to first demonstrate a *prima facie* case of discrimination, then shifts the burden to the employer to demonstrate a legitimate reason for the adverse employment action, then shifts the burden back to the plaintiff to demonstrate the falsity of the proffered reason.  *Laber v. Harvey,* 438 F.3d 404, 431-432 (4th Cir. 2006).

To establish a *prima facie* case of discrimination under Title VII or the ADEA, a plaintiff must show that she:  (1) is a member of a protected class; (2) suffered an adverse employment action; (3) was at the time performing her job duties at a level that met their employer's legitimate

expectations; and (4) the position remained open or was filled by a similarly qualified applicant outside the protected class. *See, e.g., Miles v. Dell, Inc.,* 429 F.3d 480, 485 (4th Cir. 2005). *Hill,* 354 F.3d at 285.

Ms. Doyle acknowledges she has no evidence of direct discrimination. She never heard or was ever told of any discriminatory comments made about her age or gender by anyone on behalf of Rite Aid. (Doyle Tr., p. 105). The only alleged act of age discrimination Ms. Doyle points to is that *after* she went on her leave of absence a younger male, a friend of the district manager, was made the store manager. In age discrimination cases, the Fourth Circuit has held that self-serving inferential statements, such as this one, are insufficient to sustain an ADEA claim when no supporting evidence is presented. *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 520, 521 (4th Cir. 2006).

Ms. Doyle cannot present a *prima facie* case of either gender or age discrimination. First, she suffered no adverse employment action as there was no change in the terms, conditions or benefits of her employment. Transferring another employee does not constitute an adverse employment action against Ms. Doyle. Ms. Le's employment at the Alexandria store was not a condition, term or benefit of Ms. Doyle's employment. Second, Ms. Doyle admits she was not performing her job at a level that fit Rite Aid's legitimate expectations. This is the reason she applied for, and went out on, a leave of absence. Therefore, she has failed to establish a *prima facie* case of gender or age discrimination. *Riley v. Technical & Management Serv. Corp*, 872 F. Supp 1445, 1452 (D.Md. 1995); *Douglas v. PHH Fleet America Corp. Inc.,* 832 F.Supp. 1003, 1009 (D.Md. 1993).

C.    <u>The Transfers of the Assistant Manager while Ms. Doyle had Lyme disease did not Constitute  Disability Discrimination</u>

Ms. Doyle has brought a claim for disability discrimination under 42 U.S.C. § 2000e-2(a). However, 42 U.S.C. § 2000e-2(a) does not prohibit disability discrimination.  It is the Americans with Disability Act 42 U.S.C.§ 12213 ("ADA") that provides a cause of action for disability discrimination.  Ms. Doyle has not brought a claim under the ADA.  Nevertheless, even if she had, it would fail.

The ADA provides a cause of action for disability discrimination for a "qualified individual with a disability," defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8).  Ms. Doyle alleges that Rite Aid violated her rights because her district manager transferred her assistant manager when Ms. Doyle had Lyme disease, and she needed the assistant manager to help her operate the store.

The analysis for claims of employment discrimination against the disabled involves the question of whether a person is an "otherwise qualified individual," under the ADA.  A court must first consider whether that person is able to perform the essential functions of the employment position.  42 U.S.C.§ 12111(8).  If the person is unable to do so, the court must nevertheless determine whether a person can do the job with a reasonable accommodation.  *Myers v. Hose,* 50 F.3d 278, 281-282 (4th Cir. 1995).

There is no question that in November 2006 when Assistant Manager Hanh Le was transferred, Ms. Doyle was not able to perform the essential functions of a Rite Aid Store Manager. Ms. Doyle was having problems with her reasoning ability, and her language skills were severely

hampered.  She could not stand for long periods of time and was unable to maintain balance when walking, standing and running.  Dr. Fletcher has opinioned that in November 2006, Ms. Doyle was incapacitated for an unknown duration and could not meet the physical or mental requirements of a Rite Aid store manager.

The issue then becomes whether the accommodation Ms. Doyle requested--that her assistant manager, Hanh Le, not be transferred because Ms. Doyle relied on her to perform many of the essential functions of a store manager--was a reasonable accommodation under the ADA.  It is well established that such an accommodation is not reasonable.

An employer is not required to assign tasks to other employees or to reallocate essential functions that an employee must perform.  *Epps v. City of Pine Lawn*, 353 F.3d 588 , 593 (8th Cir. 2003); citing *Hatchett v. Philander Smith College*, 251 F.3d 670, 675 (8th Cir. 2001).  An employer is also not required to exempt an employee from performing essential functions.  *Dark v. Curry County,* 451 F.3d 1078, 1087 (9th Cir. 2006).  Requiring other employees to perform an essential function of a disabled employee's job is not a reasonable accommodation.  *Peter v. City of Mauston* , 311 F.3d 835, 845 (7th Cir. 2002); *Bratten v. SSI Services, Inc*. 185 F.3d 625, 632-633 (6th Cir. 1999).

Yet, this is the exact type of accommodation Ms. Doyle requested.  She wanted to retain Hanh Le because Ms. Le was performing the essential functions of a store manager--functions that Ms. Doyle could no longer perform.  Ms. Doyle knew she could not meet the requirements of a store manager without Ms. Le's help.  The accommodation Ms. Doyle requested was not reasonable, and the refusal of Rite Aid to provide it to her was not a violation of the ADA.

## Conclusion

There is no dispute as to any material fact, and Rite Aid should be granted summary judgment on all counts of the Plaintiff's Complaint as a matter of law.

Respectfully submitted,


_____/s/_____
James A. Rothschild (Bar # 00624)
ANDERSON, COE & KING, LLP
201 North Charles Street, Suite 2000
Baltimore, Maryland  21201
T (410) 752-1630; F  (410) 752-0085
rothschild@acklaw.com
**_Counsel for Defendant Rite Aid Corporation_**