IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NANCY L. DOYLE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-08-1106 |
| RITE AID CORPORATION, | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Nancy L. Doyle ("Doyle" or "Plaintiff") alleges Defendant Rite Aid Corporation ("Rite Aid" or "Defendant") discriminated against her because of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.* ("Title VII"), her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et. seq.* ("ADEA"),[1] and her disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA").[2]  Currently pending before this Court is Rite Aid's Motion for Summary Judgment (Paper No. 23).  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2008).  For the reasons stated below, Rite Aid's Motion for Summary Judgment (Paper No. 23) is GRANTED.

## <u>BACKGROUND</u>

Plaintiff Nancy Doyle is a former Rite Aid store manager in Alexandria, Virginia who suffers from Lyme disease.  In December 2006, Doyle took a leave of absence when her

---

[1] Doyle asserts her age discrimination claim under 29 U.S.C. § 633a(c).  Compl. ¶ 7, 33.  However, since this statute does not prohibit age discrimination, this Court interprets her claim as being brought under the ADEA.

[2] Doyle asserts her disability discrimination claim under 42 U.S.C. § 2000e-2(a).  Compl. ¶ 7, 38.  However, since this statute does not prohibit disability discrimination, this Court interprets her claim as being brought under the ADA.

symptoms made it too difficult for her to work.  She was ultimately terminated when she did not

return to work after taking the maximum amount of leave possible.  Doyle alleges that Rite Aid

discriminated against her because of her disability, age and gender by reducing her support staff

after her medical condition deteriorated, thereby making it impossible for her to perform her job

with her physical and mental limitations.

      In 1976, Doyle began working at Rite Aid as a cashier.  Opp. at 3.  In 1993, she became a

store manager at Rite Aid Store No. 3658 in Alexandria, Virginia, a position she held until her

termination on December 6, 2006.  Rite Aid's job description states that, among other

requirements, a store manager must be able to:

- use her reasoning ability to solve practical problems
- stand dynamically for long periods without a break
- talk and hear: verbally express ideas and impart information or instructions
- maintain balance while walking, standing, crouching, or running
- occasionally lift up to twenty-five pounds

Summ. J. Ex. A.  A store manager is expected to close her store a minimum of one night a week

and work a full shift every other Saturday.  Summ. J. Ex. B.

      In June 2002, Doyle was hospitalized for a pulmonary embolism and did not return to

work until August 2002.  Summ. J. at 2.  After returning to her job, though, Doyle began having

problems with stuttering, fatigue, and tasks involving her short-term memory.  Summ. J. Ex. C at

12-14.  Doyle subsequently spoke with a superior about her health issues, and Rite Aid provided

her with an additional assistant manager to help with her work load.  Summ. J. Ex. C at 111.   At

some point in 2003, Doyle was diagnosed with Lyme disease.  Summ. J. Ex. C at 14-15.

      By May 2004, Doyle's doctor, Sarah Fletcher, M.D., determined that Doyle's heath

problems were so severe that she should stop working at night.  Summ. J. Ex. C at 17-18.  Rite

Aid accommodated this restriction by allowing her to work earlier hours and delegating her

2

responsibility of staying late to close the store once a week.  Summ. J. Ex. B.  Rite Aid also

permitted Doyle to take off every Thursday and Friday so that she could travel to North Carolina

to obtain medical treatment.  Summ. J. Ex. C.

In June 2006, Ben Amin "Benny" Tokhi ("Tokhi") became Doyle's district manager.

Summ. J. at 3.  Tokhi began a reorganization of the stores in his district, and approached several

employees in Doyle's store about potentially transferring to other Rite Aid stores.  Summ. J. Ex.

D.  After learning about this, Doyle became very concerned about Tokhi's plans to rearrange her

staff.  Summ. J. at 3.  In August 2006, Doyle wrote a letter to Carl "Bill" Jackson, Rite Aid's

Regional Vice President, complaining about Tokhi's actions.  Summ. J. Ex. E.  Jackson met with

Doyle to discuss these concerns.  Summ. J. at 4.  By October 2006, Doyle was distraught by how

Tokhi was changing and reducing her staff, so she retained a lawyer and wrote a letter to Jackson

reiterating her earlier complaints.  *Id*.  Jackson subsequently told Tokhi not to transfer employees

in Doyle's store without first reviewing his plans with Rite Aid's Regional Human Relations

Manager.  Summ. J. Ex. B.  Michelle Stahl, a Ride Aid Division Human Relations Manager, also

began an investigation into Doyle's accusations and spoke with Doyle about her concerns.

Summ. J. Ex. F. ¶ 6.  Stahl subsequently arranged to meet with Doyle at her store on October 20,

2006, but when she arrived Doyle refused to speak to her about her grievances.  *Id*. ¶ 7.  Instead,

Doyle became upset, complained that she had talked to Jackson without success, and left the

store.  *Id*. ¶ 8.  Stahl ultimately discontinued the investigation because Doyle would not

cooperate.  *Id*. ¶ 12.

At some time during November 2006, Hanh Le, one of Doyle's assistant managers, was

transferred to a different store.  Summ. J. Ex. D.  On November 24, 2006, Doyle requested a

leave of absence because of the combination of her health problems and the stress she felt as a

result of the pressure of having a smaller staff.  Summ. J. Ex. G.  Doyle's leave of absence

application was accompanied by a certification from Dr. Fletcher that she was "incapacitated for

an unknown duration."  Summ. J. Ex. G.  After Doyle took the maximum leave of 180 days

under Rite Aid policy, Rite Aid terminated her when that leave expired and she did not return to

work.  Doyle was specifically told that she could contact Rite Aid's Human Resource Manager if

she wanted to be reemployed.  Summ. J. Ex. H.  Doyle did not ever apply for re-employment.

Summ. J. Ex. C at 139.

STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall

be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A

material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, a judge's function is limited to determining

whether sufficient evidence exists on a claimed factual dispute to warrant submission of the

matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, a court must consider the facts and all reasonable inferences

in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986).  After the moving party has established the absence of a

genuine issue of material fact, the nonmoving party must present evidence in the record

demonstrating an issue of fact to be resolved at trial. *Pension Ben. Guar. Corp. v. Beverley*, 404

4

F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)).  Summary judgment will be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

This Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).  If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted.  *Anderson*, 477 U.S. at 249-50.  This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md.  2001) (citations omitted).

<u>ANALYSIS</u>

## I.      Remaining Claims (Counts I and II)

In her Complaint, Doyle attempts to allege that she has been discriminated against because of her gender in violation of Title VII and her age in violation of the ADEA.  Doyle presents no evidence to support these vague allegations, but instead focuses solely on her disability claim.  For instance, in her Complaint, Doyle supports her "sex discrimination" claim with the statement that "there is a direct nexus between defendant's treatment and Ms. Doyle's complete *disabled* state."  Compl. ¶ 27 (emphasis added).  It is Doyle's burden to establish that her gender and age were a determining factor in Rite Aid's decision to terminate her employment, and she has not even attempted to meet this burden.  *Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004); *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277,

284 (4th Cir. 2004).  As Rite Aid points out in its Reply, Doyle has never responded to Rite

Aid's motion for summary judgment as to her gender and age discrimination claims.

Accordingly, summary judgment must be granted as to Doyle's gender and age discrimination

claims (Counts I and II).

## II.        Disability Discrimination Claim (Count III)

The Americans with Disabilities Act prohibits discrimination by a covered entity,

including a private employer such as Rite Aid, "against a qualified individual" with a disability.

*See* 42 U.S.C. §§ 12111(2), 12112(a).  A qualified individual with a disability is defined as "an

individual with a disability who, with or without reasonable accommodation, can perform the

essential functions of the employment position that such individual holds . . ." 42 U.S.C. §

12111(8).  Rite Aid challenges whether Doyle was a qualified individual who could perform the

essential functions of a store manager even with a reasonable accommodation.  Summ. J. at 11.

Thus, this Court must address whether there is any genuine issue of material fact with respect to

whether Doyle could perform the essential functions of her job.  If not, this Court must further

address whether any reasonable accommodation by Rite Aid would have enabled her to perform

those functions.  *See* 42 U.S.C. § 12111(8); *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d

209, 213 (4th Cir. 1994).

### A.        Essential Functions

The essential functions of a job are the "fundamental job duties" of the position.  29

C.F.R. § 1630.2(n)(1).  A job function may be considered essential because, among other

reasons, the position exists to perform that function, there are a limited number of employees to

whom that function can be assigned, or the function is so specialized that the employee was hired

specifically to perform it.  29 C.F.R. § 1630.2(n)(2).  In determining which functions are

essential, the ADA instructs that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).

As an initial matter, Doyle argues that she "did not have to perform everything listed on a generic job description." Opp. at 11. However, Rite Aid's store manager job description is not a generic job description, but instead is specific to the responsibilities of that position. Summ. J. Ex. A. Furthermore, supported by both Doyle's and Dr. Fletcher's deposition testimony, Rite Aid only notes that Doyle is unable to perform *most* of what Rite Aid considers to be her essential job functions. For example, the Rite Aid job description states that a store manager must be able to "stand dynamically for long periods without a break." Summ. J. Ex. A. Yet, Doyle acknowledges that by November 2006 she was having problems "talking, walking and thinking" and that she "couldn't even barely walk." Summ. J. Ex. C at 93. Dr. Fletcher also confirms that Doyle could not stand or walk for extended periods. Summ. J. Ex. I at 105-06. The job description states that a store manager must have "reasoning ability" including the "ability to solve practical problems," as well as "verbally express idea and… instructions." Summ. J. Ex. A. Dr. Fletcher concedes that by November 2006 Doyle was having problems with her reasoning ability, language skills, and concentration. Summ. J. Ex. I at 104-05. The job description explains that a store manager must be able to work extended hours at times, climb stairs and occasionally lift up to 25 pounds. Summ. J. Ex. A. Dr. Fletcher allowed that Doyle didn't have the ability to work long hours, balance when walking or climbing stairs, or carry packages weighing over ten pounds. Summ. J. Ex. I. at 106-07. Accordingly, Rite Aid has established that Doyle could not perform the essential functions of being a store manager.

In response, Doyle submits a number of affidavits, including her own, purporting to establish that in November 2006 she could, in fact, perform the essential functions of her job. These affidavits do not provide any specific facts disputing Doyle's myriad limitations, such as that she was unable to stand for long periods of time, work extended hours or effectively express her instructions to other Rite Aid employees. Simply stating in pleadings and affidavits that an employee is able to perform the essential functions of her job, without specific facts to support such statements, is conclusory and insufficient to establish a genuine issue of material fact. *See, e.g.*, *Guinness PLC v. Ward*, 955 F.2d 875, 901 (4th Cir. 1992) ("the mere placement of . . . conclusory allegations and speculative assertions into affidavits or declaration without further legitimate support clearly does not suffice" to overcome summary judgment); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990) ("replacing conclusory allegations of the complaint . . . with conclusory allegations of an affidavit" is insufficient to overcome summary judgment).

In light of Doyle's undisputed physical and mental limitations, there is simply no genuine issue of material fact with respect to whether Doyle was able to perform the essential functions of the store manager without reasonable accommodations. Quite obviously, she was not. Accordingly, this Court must turn to the issue of whether Rite Aid could have offered any reasonable accommodation that would have enabled Doyle to perform those functions.

**B.      Reasonable Accommodations**

Under the ADA, an employer is required to make "reasonable accommodations" for the known physical or mental limitations of a qualified disabled individual, unless the accommodation would impose an undue hardship on the operation of the business. 42 U.S.C. § 12112(b)(5)(A). A reasonable accommodation may include "job restructuring, part-time or

modified work schedule, reassignment to a vacant position, [and] acquisition or modification of equipment or devices . . ." 42 U.S.C. § 12111(9)(B).

Doyle concedes that Rite Aid accommodated her for years by allowing her to work earlier hours, not work on Saturdays and take days off to make her medical appointments. However, Doyle claims that Rite Aid stopped accommodating her in 2006 by eliminating the extra assistant manager she had to help her with some of her job responsibilities.  Yet, it is well established that the ADA does not require an employer to hire an additional person to perform an essential function of a disabled employee's position.  *Lusby v. Metropolitan Wash. Airports Auth.*, 1999 U.S. App. LEXIS 18428, at *16 (4th Cir. Aug. 9, 1999); s*ee also* 29 C.F.R. Pt. 1630, App. at § 1630.2(o) ("An employer or other covered entity is not required to reallocate essential functions.").  Rite Aid provided Doyle with numerous reasonable accommodations, such as changing her hours, yet she still could not perform the essential functions of her job.  Although Rite Aid voluntarily provided Doyle with an extra assistant manager after she became sick and expressed a need for extra support, Rite Aid was not required to continue providing Doyle with this extra staff indefinitely.  Thus, Doyle is not a qualified individual because she is incapable of performing the essential functions of a Rite Aid store manager with or without reasonable accommodations.  Accordingly, summary judgment must be granted as to Doyle's disability discrimination claim (Count III).

For the reasons stated above, Rite Aid's Motion for Summary Judgment (Paper No. 23) is GRANTED.

A separate Order follows.

Dated: February 1, 2010                                    /s/_____
                                                              Richard D. Bennett
                                                              United States District Judge